**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KEVIN JOHNSON,

      Petitioner,               Civil No. 2:07-CV-13001
                                    HONORABLE ARTHUR J. TARNOW
v.                              SENIOR UNITED STATES DISTRICT JUDGE

GREG McQUIGGIN,

      Respondent,
_____/

<u>**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS**</u>
<u>**AND GRANTING A CERTIFICATE OF APPEALABILITY AND  LEAVE TO APPEAL**</u>
<u>**IN FORMA PAUPERIS**</u>

      Kevin Johnson, ("petitioner"), confined at the Chippewa Correctional Facility in

Kincheloe, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254. [1]  In his *pro se* application, petitioner challenges his conviction for first-

degree premeditated murder, M.C.L.A. 750.316(a); and felony firearm, M.C.L.A.

750.227b.  For the reasons stated below, the petition for writ of habeas corpus is

**DENIED.**

---

     [1]  When petitioner originally filed his petition for writ of habeas corpus, he was incarcerated at the Cotton Correctional Facility, but has since been transferred to the Chippewa Correctional Facility.  The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner would be the warden of the facility where the petitioner is incarcerated. *See Edwards Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 foll. U.S.C. § 2254.  Therefore, the Court substitutes Warden Greg McQuiggin in the caption.

**I. Background**

Petitioner was convicted of killing his live-in girlfriend following a jury trial in the

Wayne County Circuit Court.  The relevant facts set forth by the Michigan Court of

Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).

*See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant shot Lowe in the middle of the forehead, at close range. According to defendant's testimony and his statements to the police, when he came home from drinking at a bar in the early morning hours, he and Lowe got into a heated argument.  Defendant was tired and just wanted to go to bed, which he did.  He was later awakened by "a sharp pinching pain" when Lowe nicked the back of his leg with a knife; their argument resumed, with Lowe swiping at him with the knife.  Lowe stormed out of the bedroom into the living room, telling defendant to get up and finish what he started.  Defendant stated that because he was scared, he got out of bed and got a gun for protection from the bedroom closet, then went into the living room, planning to leave the house.  Lowe told defendant, "you ain't going to sho[o]t me you [expletive]."  As he was looking for his clothes, Lowe lunged at him with the knife, and he was so scared that he pulled the trigger.  He was approximately two feet away from her when he shot her.
>
> * * *
>
> Although defendant claimed that Lowe had a knife, and had swiped him several times with it during their argument, no knife was found in the living room, where she was killed.  He claimed that he shot Lowe when she lunged at him with a knife, but he admitted, and evidence showed, that he shot her in the center of the forehead at close range.  Further, defendant claimed that he retrieved the gun for protection, but the evidence established that Lowe was only five feet tall and weighed 109 pounds, much smaller than defendant.  In his statement to the police in which he admitted shooting Lowe, defendant did not mention that he shot Lowe in self-defense.  Rather, he stated that he tried to scare Lowe by pointing the gun at her, and she said, "you ain't going to sho[o]t me ....,"; he could not stand it anymore, and he "raised the gun" and shot her.  Defendant further elaborated in his statement that in shooting Lowe, he "made a horrible judgment call."

> *People v. Johnson,* No. 266174, * 2 (Mich.Ct. App. February 27, 2007).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 478 Mich. 930, 732 N.W.2d 923 (2007).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Petitioner's 14th Amendment right to due process under the United States Constitution and Michigan Constitution 1963 Art 1 Sec 17, was violated where the evidence was insufficient to sustain Petitioner's conviction of first degree premeditated murder.

II. Petitioner was denied his 5th and 14th Amendment rights of equal protection and due process of law where the prosecutor committed misconduct by asking Petitioner to comment on the credibility of key prosecution witnesses. If this court deems the issue forfeited because trial counsel did not object to the arguments, then counsel was ineffective.

III. Petitioner's 5th, 6th, and 14th Amendment rights under the United States Constitution and Michigan Constitution 1963 Art 1 Sec(s) 17, 20 were violated where Petitioner requested counsel before giving a statement but investigators still questioned Petitioner in violation of *Miranda* and Petitioner's right to counsel.

IV. Petitioner's 5th and 14th Amendment rights to due process under the United States Constitution was violated where the state court failed to properly instruct the jury that Petitioner had no duty to retreat while attacked in his own home.

## II.  Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

**A.** **Petitioner's 14th Amendment right to due process under the United States Constitution and Michigan Constitution 1963 Art 1 Sec 17, was violated where the evidence was insufficient to sustain Petitioner's conviction of first degree premeditated murder.**

Petitioner first argues that there was insufficient evidence to establish that he committed first-degree premeditated murder, contending that the evidence establishes that he shot the victim during the heat of an argument and in self-defense.

In rejecting petitioner's sufficiency of evidence claim, the Michigan Court of Appeals concluded:

> Given that a few seconds may be sufficient time for a second look, a rational trier of fact could conclude that defendant deliberately killed Lowe with

4

premeditation when he raised the gun and shot her in the living room, in the middle of the forehead, at close range under the circumstances presented. Likewise, as the prosecutor pointed out in her argument, the circumstances of the shooting, as well as defendant's statements and his actions following the shooting, were inconsistent with his claim of self-defense. He fled to his mother's house after the shooting, leaving his three children. He later returned to his home to retrieve the gun, and then went with his mother's boyfriend to dispose of the gun in the river. He called 911 to report the shooting. He did not indicate to anyone that he shot Lowe in self-defense and did not report the knife wounds as the reason for the shooting. Rather, he stated that he shot her because he could not take Lowe's harassment anymore.

Although there may have been testimony to support defendant's claim that the shooting was not premeditated and deliberate, and that he shot Lowe in self-defense, there was also testimony and other evidence to support a contrary conclusion.

*Johnson,* Slip. Op. at * 2-3 (internal citations omitted).

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000)(*citing to Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In reviewing a state court's application of the *Jackson* standard, a federal habeas court is required to determine whether the state court's application of the law in reviewing a sufficiency of evidence claim was reasonable. *See Tucker v. Palmer,* 541 F. 3d 652, 666 (6th Cir. 2008); *cert. den.* 130 S. Ct. 109 (2009)(citing 28 U.S.C. § 2254(d)(1)). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Adams v. Smith,* 280 F. Supp. 2d 704, 714 (E.D. Mich. 2003) (*quoting Jackson,* 443 U.S. at 324, n. 16).

5

To constitute first-degree murder in Michigan, the state must establish that a defendant's intentional killing of another was deliberated and premeditated. *See Scott v. Elo*, 302 F. 3d 598, 602 (6th Cir. 2002)(*citing People v. Schollaert*, 194 Mich. App. 158; 486 N.W.2d 312, 318 (1992)). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001)(*citing People v. Anderson*, 209 Mich. App. 527, 537; 531 N. W. 2d 780 (1995)). Premeditation may be established through evidence of the following factors:

1. the prior relationship of the parties;
2. the defendant's actions before the killing;
3. the circumstances of the killing itself;
4. the defendant's conduct after the homicide.

*Cyars v. Hofbauer,* 383 F. 3d 485, 491 (6th Cir. 2004); *Anderson*, 209 Mich. App. at 527.

Although the minimum time required under Michigan law to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *See Williams v. Jones,* 231 F. Supp. 2d 586, 594-95 (E.D. Mich. 2002)((*quoting People v. Vail,* 393 Mich. 460, 469; 227 N.W. 2d 535 (1975)). "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be sufficient to create a jury question on the issue of premeditation." *Alder v. Burt,* 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003). "[A]n opportunity for a 'second look' may occur in a matter of seconds, minutes, or hours, depending upon the totality of the circumstances

surrounding the killing." *Johnson,* 159 F. Supp. 2d at 596(*quoting People v. Berthiaume*, 59 Mich. App. 451, 456; 229 N.W. 2d 497 (1975)).  Premeditation and deliberation may be inferred from the type of weapon used and the location of the wounds inflicted. *See People v. Berry*, 198 Mich. App. 123, 128; 497 N. W. 2d 202 (1993).  Use of a lethal weapon will support an inference of an intent to kill. *Johnson,* 159 F. Supp. 2d at 596 (citing *People v. Turner*, 62 Mich. App. 467, 470; 233 N.W. 2d 617 (1975)).  Finally, premeditation and intent to kill may be inferred from circumstantial evidence. *See DeLisle v. Rivers,* 161 F. 3d 370, 389 (6th Cir. 1998).

Under Michigan law, proof of the absence of grounds for self-defense is an element of the crime of murder which the prosecution must bear the burden of proof. *See Berrier v. Egeler,* 583 F. 2d 515, 521 (6th Cir. 1978).  Under Michigan law, one acts lawfully in self-defense if he honestly and reasonably believes that he is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the time of the act. *Blanton v. Elo*, 186 F. 3d 712, 713, n. 1 (6th Cir. 1999)(*citing People v. Heflin*, 434 Mich. 482; 456 N.W. 2d 10 (1990)).

The prosecution presented sufficient evidence for a rational trier of fact to conclude that petitioner shot the victim with premeditation and deliberation and that he did not act in self-defense.  The evidence establishes that petitioner raised his gun and shot the victim in the middle of the forehead at close range.  Under Michigan law, premeditation may also be logically inferred from wounds inflicted on vital parts of the victim's body. *See Lundberg v. Buchkoe,* 338 F. 2d 62, 69 (6th Cir. 1964).  The fact that

petitioner did not attempt to seek medical help for the victim after the shooting could lead a rational trier of fact to conclude that petitioner acted with premeditation and deliberation. *See Delisle*, 161 F. 3d at 389 (circumstantial evidence of premeditation established by petitioner's failure to help victims after car drove into lake). There was also evidence that petitioner disposed of his gun subsequent to the murder. This activity would also support a finding of premeditation and deliberation. *See Marsack v. Howes*, 300 F. Supp. 2d 483, 492 (E.D. Mich. 2004). Although petitioner claimed that the victim attacked him with a knife, no such weapon was found in the living room where the shooting took place. From this, a rational trier of fact could have rejected petitioner's claim of self-defense. *See e.g. Johnson v. Hofbauer,* 159 F. Supp. 2d at 597 (sufficient evidence showed that defendant did not act in self-defense, so as to support his conviction for second degree murder; defendant had begun shooting as victim was retreating, there was no evidence that victim was actually armed, and evidence of whether victim appeared to be drawing weapon was conflicting). Finally, petitioner did not tell anyone at the time of the shooting that he shot the victim in self-defense.

There was sufficient evidence for a rational trier of fact to determine that petitioner committed the murder with premeditation and deliberation. Even if there was evidence presented which could have supported petitioner's self-defense theory, this Court must view the evidence in a light most favorable to the prosecution and the jury

was not required to accept petitioner's version of the facts. *See Williams v. Jones,* 231 F. Supp. 2d at 595. Petitioner is not entitled to habeas relief on his first claim.

> **B.      Petitioner was denied his 5th and 14th Amendment rights of equal protection and due process of law where the prosecutor committed misconduct by asking Petitioner to comment on the credibility of key prosecution witnesses. If this court deems the issue forfeited because trial counsel did not object to the arguments, then counsel was ineffective.**

Petitioner next contends that he was deprived of a fair trial because of prosecutorial misconduct. Petitioner further alleges that his trial counsel was ineffective for failing to object to the misconduct.

Respondent contends that petitioner's prosecutorial misconduct claim is procedurally defaulted, because he failed to preserve the issue by objecting to the misconduct at trial. Petitioner claims that his trial counsel was ineffective for failing to object to the prosecutor's questions and comments. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, it would be easier to consider the merits of this claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is

the fairness of the trial, not the culpability of the prosecutor.  On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-56 (6th Cir. 1993).  In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury and the strength of the competent proof against the accused. *Id.*

Petitioner first claims that the prosecutor committed misconduct by asking him on cross-examination to comment about the credibility of the prosecution witnesses.

In *United States v. Richter*, 826 F. 2d 206, 208 (2nd Cir. 1987), the Second Circuit held that it was "improper cross- examination" for the prosecutor to ask a witness whether an FBI agent "was either mistaken or lying."  The Sixth Circuit, however, has not yet decided whether the holding in *Richter* should be adopted in this circuit. *See United States v. Washington,* 60 F. 3d 829 (Table); No. 1995 WL 408128 , * 3 (6th Cir. July 10, 1995).

In any event, because this is habeas review, and not a direct appeal, review of this issue is more limited.  Several cases have rejected similar claims from habeas petitioners, finding there to be no violation of the federal constitution for a prosecutor in a state criminal trial to ask the defendant whether the witnesses were lying. *See Davis v. Burt,* 100 Fed. Appx. 340, 347 (6th Cir. 2004)(prosecutor's cross-examination of

habeas petitioner about whether he thought witnesses were lying or mistaken was not so egregious as to entitle him to habeas relief); *Knapp v. White,* 296 F. Supp. 2d 766, 778-79 (E.D. Mich. 2003)(petitioner failed to show how he was harmed by the prosecutor's improper question to comment on the credibility of a prosecution witness, particularly since his defense was that several witnesses were lying in favor of the prosecution); *Welch v. Burke,* 49 F. Supp. 2d 992, 1005-06 (E.D. Mich. 1999)(although questions to habeas petitioner about the credibility of witnesses may have been improper under state law, the prosecutor's questions did not deprive petitioner of a fair trial under federal constitutional standards).

During cross-examination, petitioner denied telling Officer Charles Zwicker of the Detroit Police Department, "I couldn't stand it anymore. I raised the gun and I shot [Lowe]".  Petitioner further denied telling the police officer who transported him to the Third Precinct that he shot Lowe because he was "pissed" at her.  Finally, petitioner denied that he went to put some pants on after the shooting, even though Willie Walker had testified that he had done so.  In response to each denial, the prosecutor asked defendant whether the witnesses, who had testified otherwise, were lying.  Therefore, the prosecutor's questions on cross-examination about whether or not these prosecution witnesses had testified falsely did not deprive petitioner of a fair trial, so as to entitle him to habeas relief.

Petitioner next argues that the prosecution improperly vouched for his witnesses by arguing in his closing summation that these witnesses had no motive to lie.  A

prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F. 3d 731, 737 (6th Cir. 1999). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id.* The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F. 2d 1277, 1283 (6th Cir. 1987). The Sixth Circuit has held that to constitute reversible error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F. 3d 422, 433 (6th Cir. 2002).

Numerous cases have held that a prosecutor does not engage in vouching by arguing that his witnesses have no reason or motivation to lie, when such comments are based on the evidence and do not reflect a personal belief of the prosecutor. *See United States v. Jackson,* 473 F. 3d 660, 672 (6th Cir. 2007); *U.S. v. Israel,* 133 Fed. Appx. 159, 165 (6th Cir. 2005). Accordingly, petitioner is not entitled to habeas relief on his prosecutorial misconduct claims.

The Court will likewise reject petitioner's related ineffective assistance of counsel claim. To show that he was denied the effective assistance of counsel under

federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. To prevail on his ineffective assistance of counsel claims, a habeas petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland. See e.g. Dittrich v. Woods,* 602 F.Supp.2d 802, 807 (E.D.Mich. 2009).

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *See Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001). Because the prosecutor's conduct was not improper, counsel's failure to object to the prosecutor's questions and arguments was

13

not ineffective assistance of counsel. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 866

(E.D. Mich. 2003).   Accordingly, petitioner is not entitled to habeas relief on his second

claim.

> **C.      Petitioner's 5th, 6th, and 14th Amendment rights
> under the United States Constitution and
> Michigan Constitution 1963 Art 1 Sec(s) 17, 20
> were violated where Petitioner requested counsel
> before giving a statement but investigators still
> questioned Petitioner in violation of *Miranda* and
> Petitioner's right to counsel.**

Petitioner next claims that the trial court erred in denying his motion to suppress

his statement to the police, claiming that he had invoked his right to counsel during the

police interrogation.

Prior to trial, an evidentiary hearing was conducted in the trial court on

petitioner's motion to suppress the statement.   Testimony at the hearing established

that petitioner was picked up from the Third Precinct and transported to Detroit Police

Headquarters for questioning.   Petitioner was advised by Officer Zwicker of his

constitutional rights.   Petitioner informed Officer Zwicker several times that he wished

to have an attorney present.   Petitioner informed Zwicker that he had a family friend

who was an attorney and asked the police to call her.   Zwicker's partner called the

telephone number that petitioner gave them, but when no one answered, he hung up

and did not leave a message. Officer Zwicker's partner returned and explained to

petitioner that the attorney's line was busy and that he did not leave a message.

Officer Zwicker testified that the officers told petitioner that they were going to take him

back to the Third Precinct, at which point, petitioner informed the officers "let's just do this, let's get it over with."  Officer Zwicker interpreted this to mean that petitioner wanted to make a statement.  Officer Zwicker asked petitioner if he was sure that he wanted to make a statement and again advised him that he did not have to make a statement.  Petitioner again indicated that he wanted to speak with the police.  Officer Zwicker reviewed petitioner's constitutional rights with him again, before obtaining a statement from petitioner.

Petitioner testified that he asked for an attorney on more than one occasion. Petitioner stated that before he asked to speak to his attorney, he also asked to speak with his mother.  Petitioner was told that if he did not make a statement, he would not be able to use the telephone to call his mother. Petitioner stated that he made the statement to the police because he wanted to call his mother, and he was "traumatized" by the fact that the victim was his "kid's mother."  Petitioner also testified that he wanted to speak to his attorney also.  On cross-examination, petitioner admitted that he told Officer Zwicker "let's just do it now" and "I can't live with this on my chest."

The trial judge denied petitioner's motion to suppress.  The judge noted that petitioner asked for a lawyer several times and the police attempted without success to contact the lawyer.  Petitioner was informed by the police that they were not able to reach his lawyer and that they were going to transport him back to the Third Precinct,

at which time, petitioner told the police "let's do this."  The judge further found that

petitioner had not been threatened or promised anything. (*Id.* At p. 22).

In rejecting petitioner's claim, the Michigan Court of Appeals ruled:

> Here, even though defendant was read his *Miranda* rights and requested the presence of counsel, the police did not take a statement from him until after he indicated, "Let's just do this, let's get it over with."  Therefore, because defendant initiated further communication with police, the trial court did not err in denying defendant's suppression motion.
>
> \*   \*   \*
>
> Defendant stated, "Let's just do this, let's get it over with," in response to the police telling him that they were unable to reach the defendant's attorney and that they would return defendant to the Third Precinct. The police comments did not involve express questioning and cannot be said to be likely to elicit an incriminating response, and thus they did not constitute further interrogation in violation of defendant's right to counsel.  After defendant indicated that he wanted to make a statement, Officer Zwicker even asked defendant if he was sure of this decision.  Defendant responded that he was sure.  We find no error.
>
> *Johnson,* Slip. Op. at * 5.

When an accused invokes his right to counsel during custodial interrogation, that

interrogation must cease until counsel is made available, unless the accused initiates

further conversation with the police. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

Petitioner clearly invoked his right to counsel by giving the police the name and

telephone number of his attorney and asking the police to call her. *See Abela v. Martin,*

380 F.3d 915, 926 (6th Cir. 2004)(statement "maybe I should talk to an attorney by the

name of William Evans" was an unequivocal request for counsel where the suspect

specifically named his attorney and gave the police officer the attorney's business

card).

In *Oregon v. Bradshaw*, 462 U.S. 1039 (1983), a plurality of the Supreme Court concluded that the police could speak to a defendant, without depriving him of his rights, when the defendant asked "Well, what is going to happen to me now?" even though the defendant had previously invoked his right to counsel. *Id.* at 1041-42.  The plurality concluded that by asking this question, the defendant had "evinced a willingness and a desire for a generalized discussion about the investigation." *Id.* at 1045-46.  By contrast, the dissent in *Bradshaw* indicated that in order to reinitiate an interrogation after invoking the right to counsel, the suspect must "demonstrate a desire to discuss the subject matter of the investigation." *Id.* at 1055.  The Sixth Circuit "has reconciled the plurality and dissent in *Bradshaw* as stating a general rule that 'an *Edwards* initiation occurs when, without influence by the authorities, the suspect shows a willingness and a desire to talk generally about his case.'" *Davie v. Mitchell*, 547 F. 3d 297, 305 (6th Cir. 2008)(*quoting United States v. Whaley*, 13 F. 3d 963, 967 (6th Cir. 1994)).

When petitioner was informed by the police that they were unable to reach his attorney and that they were going to transport him back to the Third Precinct, petitioner responded "Let's just do this, let's get it over with."  Petitioner was not pressured to talk by police interrogation, but rather "evinced a willingness and a desire to talk generally about his case" even though he had previously invoked his right to counsel. *See U.S. v. Ware,* 338 F.3d 476, 481 (6th Cir. 2003)(arrestee initiated interrogation after invoking his *Miranda* right to counsel, where arrestee, after being informed that officer was

unable to contact the attorney the arrestee wished to speak to, stated "I'll just talk, that's all, you know, just forget it."). The admission of petitioner's statement did not violate his Fifth Amendment rights.

It is important note, petitioner was given a fresh set of *Miranda* warnings before he gave his statement.

Moreover, petitioner is unable to show how he was prejudiced by the admission of his statement to the police. For purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

Even if petitioner were interrogated in violation of *Edwards v. Arizona*, the admission of his statement that he made to Officer Zwicker did not result in actual prejudice to petitioner, because his confession that he shot the victim was duplicative of other evidence from William Walker and the officer who initially arrested petitioner that he had admitted to shooting the victim. *See Kyger v. Carlton,* 146 F. 3d 374, 382-83 (6th Cir. 1998). Petitioner is not entitled to habeas relief on this claim.

**D.   Petitioner's 5th and 14th Amendment rights to
due process under the United States Constitution
was violated where the state court failed to
properly instruct the jury that Petitioner had no
duty to retreat while attacked in his own home.**

Petitioner lastly claims that the trial court erred in failing to instruct the jury that,
with respect to petitioner's claim of self-defense, petitioner  had no duty to retreat
because he was attacked in his own home.

Respondent argues that petitioner's fourth claim is waived because the Michigan
Court of Appeals rejected petitioner's claim, because petitioner failed to either request
the omitted instruction or object to the trial court's failure to give it *sua sponte* and was
therefore precluded from seeking appellate relief on this ground. *Johnson,* Slip. Op. at *
5.

Michigan law requires a defendant to request a jury instruction in the trial court
in order to assign instructional error on appeal. *See Wynne v. Renico,* 279 F. Supp. 2d
866, 893 (E.D. Mich. 2003); *rev'd on other grds,* 606 F.3d 867 (6th 2010) (*citing*
M.C.L.A. 768.29)); See also MCR 2.516 (C).  Petitioner's jury instruction claim is
procedurally defaulted because it was denied by the Michigan Court of Appeals on the
ground that he failed to follow the correct procedure to preserve the claim. *Wynne,* 279
F. Supp. 2d at 893.

When the state courts clearly and expressly rely on a valid state procedural bar,
federal habeas review is also barred unless petitioner can demonstrate "cause" for the
default and actual prejudice as a result of the alleged constitutional violation, or can

demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice". *Coleman v. Thompson*, 501 U.S. 722, 750-751 (1991).  If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-480 (1986).  However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner has failed to offer any reason to excuse his procedural default. Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary for this Court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. at 533; *Meade v. Lavigne,* 265 F. Supp. 2d at 872.  Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his fourth claim as a ground for a writ of habeas corpus in spite of the procedural default.  Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's fourth claim on the merits. *Adams*

*v. Smith*, 280 F. Supp. 2d at 725.  Petitioner's state procedural default bars federal habeas review of his fourth claim. *Id.*

### E.  A certificate of appealability.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. [2] 28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

The Court concludes that jurists of reason could find its assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484-85.  Any doubt

---

[2]  Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

regarding whether to grant a COA from the denial of a petition for federal habeas relief is resolved in favor of the habeas petitioner, and the severity of the penalty may be considered in making that determination. *See Newton v. Dretke,* 371 F. 3d 250, 253 (5th Cir. 2004). Any doubts regarding the issuance of a COA in this case should be resolved in petitioner's favor, in light of the nonparolable life sentence that he is serving. More particularly, jurists of reason could find this Court's resolution of his sufficiency of evidence, prosecutorial misconduct, ineffective assistance of counsel, custodial statement, and jury instruction claims to be debatable. The Court thus issues petitioner a COA with respect to all of petitioner's claims.

Petitioner is also granted leave to proceed on appeal *in forma pauperis*, as any appeal would not be frivolous. A court may grant *in forma pauperis* status if the court finds that an appeal is being taken in good faith. *See* 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a); *Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## IV. CONCLUSION

For the reasons stated above, this Court concludes that Petitioner Johnson is not entitled to federal-habeas relief on the claims presented in his petition.

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**. (Dkt. # 1.)

**IT IS FURTHER ORDERED** that the Court issues petitioner a certificate of

appealability and leave to proceed on appeal *in forma pauperis*.

s/Arthur J. Tarnow

Arthur J. Tarnow

Senior United States District Judge

Dated: September 13, 2010

I hereby certify that a copy of the foregoing document was served upon parties/counsel
of record on September 13, 2010, by electronic and/or ordinary mail.

s/Catherine A. Pickles

Judicial Secretary